UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ADAM DEWAYNE WARDEN                                                         PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:24-CV-P595-JHM

WELLPATH HEALTHCARE LLCC *et al.*                                 DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss some claims and allow others to proceed.

**I.**

Plaintiff Adam Dewayne Warden is incarcerated as a convicted prisoner at Luther Luckett Correctional Complex (LLCC). He brings this action against the Kentucky Department of Corrections (KDOC); KDOC official Kathleen Hoffman; Wellpath Healthcare LLCC (Wellpath); and Wellpath Nurse Misty Ashley. Plaintiff sues Defendants Hoffman and Ashley in both their official and individual capacities.

Plaintiff alleges that on August 26, 2023, he went to the LLCC medical department because he was experiencing "chest pain and shortness of breath." Plaintiff states that he was met there by Defendants Hoffman and Ashley. Plaintiff told these Defendants about his symptoms and explained to them that on November 21, 2020, while incarcerated at LLCC, he was diagnosed with a "collapsed lung" which "required hospitalization for an intubation to be performed to correct the lung." Plaintiff also informed Defendants Hoffman and Ashley that, upon his return to LLCC, non-Defendant LLCC medical provider Elaine Smith told him to come to the LLCC medical department if he ever began experiencing chest pain or shortness of breath. Plaintiff then told

Defendants Hoffman and Ashley that his symptoms were the same as they were during the 2020 episode and that he believed "it is happening again."

Plaintiff alleges that Defendant Ashley took his blood pressure and asked if he had been outside. When he said yes, she told him "you might have got to hot." When she asked him if he had been running, Plaintiff said, "I tried but could not due to the chest pain and shortness of breath." Defendant Ashley then told him, "you probably got to hot go back to your dorm." Plaintiff states that he asked Defendant Ashley to please listen to his lungs with a stethoscope or use the pulse oximeter to check his oxygen saturation levels, but that she refused and told him that if he continued to seek medical treatment for his symptoms he would be written-up and placed in segregation. When Plaintiff protested, Defendant Hoffman said, "It's time to go, Warden."

Plaintiff states that because he was fearful of being punished, he waited to return to the LLCC medical department when he knew Defendant Ashley would not be there, which was two days later. Plaintiff states that a non-Defendant nurse saw him on that day and that she consulted with Smith, who used her stethoscope to evaluate Plaintiff, determined that there was no air movement in his right lung, and ordered an onsite x-ray which showed that he had a collapsed lung. Plaintiff states that he was then transported to a hospital where he had surgery. Plaintiff alleges that the doctor who performed the surgery told him that because he did not receive timely treatment, his lung had developed a "blister" which caused that section of the lung to become non-functional and that the blister had to be surgically removed. Plaintiff states that he spent seven days in the hospital recovering from this surgery.

Plaintiff alleges that when Defendants Ashley and Hoffman forced him to return to his dorm without any medical treatment, he began to fear that he would die and could not sleep because of this fear. Plaintiff states that he lived in this state for two days, until he was finally seen again

"by medical." Plaintiff also states that because of the alleged actions of Defendants Ashley and Hoffman he now continually fears that if his symptoms return he will not get the medical care he needs and will die.

Plaintiff asserts that these allegations show that Defendants violated his constitutional rights and violated state law through the intentional infliction of emotional distress.

As relief, Plaintiff seeks damages.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1),(2); and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard

of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

**A. § 1983 Claims**

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

**1. Defendant KDOC/Defendant Hoffman Official-Capacity Claim**

A state, its agencies, and state employees sued in their official capacities are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Plaintiff's claims against the KDOC and his official-capacity claim against Defendant Hoffman must be dismissed for failure to state a claim upon which relief may be granted.

### 2. Defendant Wellpath/Defendant Ashley Official-Capacity Claim

Plaintiff's official-capacity claim against Defendant Ashley is actually against her employer, Defendant Wellpath. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).

The same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation, such as Wellpath, which presumably contracts with KDOC to provide medical services to inmates. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Thus, the liability of a contracted private entity must also be based on a policy or custom of the entity. *Street*, 102 F.3d at 818; *see also Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

Here, Plaintiff does not allege that any constitutional violation occurred as a result of a custom or policy of Wellpath. Thus, Plaintiff's claims against Wellpath and his official-capacity claim against Defendant Ashley must also be dismissed for failure to state a claim upon which relief may be granted.

### 3. Individual-Capacity Claims

#### a. Defendant Ashley

Plaintiff alleges that Defendant Ashley violated his rights under the First Amendment (retaliation for seeking medical treatment); Eighth Amendment (deliberate indifference to his serious medical needs); and Fourteenth Amendment (substantive due process).

Upon consideration, the Court will allow Plaintiff's First and Eighth Amendment claims against Defendant Ashley to proceed.

The Court next considers Plaintiff's claim that Defendant Ashley violated his rights under the Fourteenth Amendment when she threatened to punish him if he continued to seek medical treatment for his symptoms. The Supreme Court has expressly held that where a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the broad rubric of substantive due process. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.").

Plaintiff's claim regarding Defendant Ashley's threat of punishment is properly characterized as a First Amendment retaliation claim, which the Court has allowed to proceed. Thus, the Court will dismiss Plaintiff's Fourteenth Amendment claim against her for failure to state a claim upon which relief may be granted.

### b. Defendant Hoffman

Upon consideration, the Court will allow Plaintiff's Eighth Amendment claim against Defendant Hoffman to proceed.

### B. State-Law Claims

As stated above, the Court construes the complaint as asserting state-law claims for the intentional infliction of emotional distress against Defendants Ashley and Hoffman. Upon consideration, the Court will also allow these claims to proceed.

### IV.

**For the foregoing reasons, IT IS ORDERED that Plaintiff's claims against KDOC and Wellpath; his official-capacity claims against Defendants Ashley and Hoffman; and his Fourteenth Amendment claim are DISMISSED pursuant to § 1915A(b)(1) for failure to state a claim upon which relief may be granted.**

Because no claims remain against them, the **Clerk of Court is DIRECTED to terminate KDOC and Wellpath as parties to this action**.

The Court will enter a separate Service and Scheduling Order to govern the claims it has allowed to proceed.

Date:

cc: Plaintiff, *pro se*
      Defendants Ashley and Hoffman
      General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4414.011